IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MARVELL INTERNATIONAL LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-869 (SLR) |
| | ) | |
| LINK_A_MEDIA DEVICES CORP., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**LINK_A_MEDIA DEVICES CORPORATION'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 1

SUMMARY OF ARGUMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

ARGUMENT ........................................................................................................... 4

I.   THIS LAWSUIT COULD HAVE BEEN BROUGHT IN THE NORTHERN
     DISTRICT OF CALIFORNIA ................................................................................ 5

II.  TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA SERVES
     CONVENIENCE AND IS IN THE INTEREST OF JUSTICE .......................................... 6

     A.   The Private Interests Weigh in Favor of Transfer ................................. 7

          1.   Delaware is Not Plaintiff's "Home Turf." ................................. 7

          2.   Plaintiff's Claim Arose Outside of Delaware ........................... 7

          3.   The Convenience of the Parties Weighs in Favor of Transfer ................... 8

          4.   Relevant Records Are in the Northern District of California, Where
               Discovery Disputes with Third Parties Will Be Litigated ........................ 9

          5.   The Convenience of Witnesses Weighs in Favor of Transfer ................. 10

     B.   The Public Interest Factors Weigh in Favor of Transfer ..................................... 12

          1.   The District of Delaware's Docket Is More Congested Than That
               of the Northern District of California ..................................................... 12

          2.   There is No Local Interest to Resolve the Dispute in Delaware.............. 13

III. CONCLUSION......................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Affymetrix, Inc. v. Synteni, Inc.,*
   28 F. Supp. 2d 192 (D. Del. 1998)........................................................................................9, 10

*Ballard Med. Prods. v. Concord Labs., Inc.,*
   700 F. Supp. 796 (D. Del. 1988)...........................................................................................7

*Belden Techs., Inc. v. LS Corp.,*
   Civ. No. 08-823-SLR, 2010 U.S. Dist. LEXIS 105056 (D. Del. Sept. 30, 2010) ....................5

*Carnegie Mellon University v. Marvell Technology Group, Ltd.,*
   Case No. 2:09-cv-00290-NBF, D.I. 26 (W.D. Pa. July 7, 2009) ........................................9, 11

*Cisco Sys. v. GPNE Corp.,*
   Civ. No. 07-671-SLR, 2008 U.S. Dist. LEXIS 31877, (D. Del. Apr. 17, 2008) ....................11

*E.I. DuPont de Nemours & Co. v. Diamond Shamrock Corp.,*
   522 F. Supp. 588 (D. Del. 1981)...........................................................................................7

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947)..............................................................................................................9

*Hertz Corp. v. Friend,*
   130 S. Ct. 1181 (2010)..........................................................................................................5

*In re Genentech, Inc.,*
   566 F.3d 1338 (Fed. Cir. 2009 ..............................................................................................8

*In re Nintendo Co.,*
   589 F.3d 1194 (Fed. Cir. 2009)............................................................................................11

*In re TS Tech USA Corp.,*
   551 F.3d 1315 (Fed. Cir. 2008)............................................................................................10

*Inter-City Prods. Corp. v. Insurance Co. of N. Am.,*
   No. 90-717-SLR, 1993 U.S. Dist. LEXIS 886 (D. Del. Jan. 26, 1993)..................................8

*International Shoe Co. v. State of Wash.,*
   326 U.S. 310 (1945)..............................................................................................................5

*Jahncke Service, Inc. v. OKC Corp.,*
   301 F. Supp. 866 (D. Del. 1969)..........................................................................................12

*Jumara v. State Farm Ins. Co.,*
   55 F.3d 875 (3d Cir. 1995)................................................................................6, 7

*LSI Indus. Inc. v. Hubbell Lighting, Inc.,*
   232 F.3d 1369 (Fed. Cir. 2000)............................................................................5

*Mekiki Co. v. Facebook, Inc.,*
   No. 09-745 (JAP), 2010 U.S. Dist. LEXIS 55638 (D. Del. June 7, 2010) .............7

*Motorola, Inc. v. Research in Motion Ltd.,*
   No. 08-104-SLR, 2008 U.S. Dist. LEXIS 65943 (D. Del. Aug. 26, 2008) ......................12, 13

*North American Philips Corp. v. American Vending Sales, Inc.,*
   35 F.3d 1576 (Fed. Cir. 1994)..............................................................................6

*Ricoh v. Honeywell,*
   817 F. Supp. 473 (D. N.J. 1993) ........................................................................13

*Stratos Lightwave, Inc. v. E20 Communs., Inc.,*
   No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653 (D. Del. Mar. 26, 2002)...................7

*Synthes USA, LLC v. Spinal Kinetics, Inc.,*
   Civ. No. 08-838-SLR, 2009 U.S. Dist. LEXIS 13743 (D. Del. Feb. 24, 2009) ...................8

*USA Techs., Inc. v. Doe,*
   713 F. Supp. 2d 901 (N.D. Cal. 2010) ...............................................................10


### STATUTES

CAL. CIV. PROC. § 410.10 (Deering 2008).................................................................5

Fed. R. Civ. P.
   37(a)(2) ............................................................................................................10
   45......................................................................................................................4

28 U.S.C.
   § 1400(a) .............................................................................................. *passim*
   § 1404(b)............................................................................................................5

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed its Complaint for Patent Infringement ("Complaint") on October 11, 2010 alleging that Link_A_Media Devices Corporation ("LAMD") infringes its patents by making, using, selling, offering for sale, or importing certain microchip products in the United States.[1] (D.I. 1.)  LAMD now moves to transfer this action for the convenience of the parties and witnesses, and in the interests of justice, under 28 U.S.C. § 1404(a).

## SUMMARY OF ARGUMENT

Delaware has no discernible connection to this case beyond it being LAMD's state of incorporation.  Plaintiff is a Bermuda holding company with a multi-billion dollar California sister entity—Marvell Semiconductor, Inc. ("MSI")—that employs the inventors of the patents-in-suit.  Those inventors (and presumably all of their pertinent records) reside in California. LAMD, a small privately-held start-up company, also is located in California with its headquarters, and nearly all of its employees, located in Santa Clara, only three miles from MSI. Plaintiff's attempt to require LAMD to litigate in a forum thousands of miles from its home, when Plaintiff itself has no known connection to Delaware and the relevant witnesses and records for both parties are in the Northern District California, is simply harassment and warrants transfer to the Northern District of California.  Notably, Plaintiff's parent corporation and a sister entity recently sought to transfer a patent case in which they were defendants to the Northern District of California, arguing that key witnesses (including two of the inventors of the patents in this case) and documents were located in that district.

Consideration of the relevant public interest factors – the relative congestion of the Delaware and Northern District dockets and the State of Delaware's non-existent interest in the

---

[1] LAMD does not admit to any of the allegations in Plaintiff's Complaint, and reserves all rights to answer and/or move to dismiss or strike such allegations.

operative facts of the lawsuit – also weighs in favor of transfer.  Delaware has no local interest in resolving a case involving California inventors and a California start-up that is claimed to infringe their inventions.  Moreover, as this Court is well aware, the docket in the District of Delaware is far more congested than that of the Northern District of California.  In sum, the Court should grant LAMD's motion to transfer.

## STATEMENT OF FACTS

LAMD is a small, privately-held start-up company that specializes in designing custom microchips for the data storage devices.  Declaration of Clarence E. Endy, Jr. In Support of Link_A_Media Devices Corp.'s Motion to Transfer ("Endy Decl.")  ¶ 3.  Founded in 2004 by a group of Silicon Valley veterans, LAMD currently employs about one-hundred and thirty people.  *Id.* at ¶ 5.  Only six employees work outside of LAMD's headquarters in Santa Clara, California, and none in Delaware.[2]  *Id.*  Although LAMD is incorporated in Delaware, the vast majority of its research, development, and engineering decisions are made at LAMD's Santa Clara headquarters.  *Id.* at ¶ 4.  None of its research, development, or engineering decisions is made in Delaware.

LAMD is a fabless chip company that has no manufacturing sites, plants or production capability of its own.  *Id.* at ¶ 8.  Renesas Electronics Corporation ("Renesas") in Japan currently manufactures LAMD's accused products.[3]  *Id.*  Orders for LAMD's accused products are typically placed through a foreign distributor in Japan and shipped directly from Renesas to the

---

[2] LAMD has one employee in Minnesota, providing field service work; one employee in the United Kingdom, providing sales support; and four employees in Japan, a general manager, sales manager, a manager of field applications, and a quality control engineer.  *Id.*

[3] Some backend processing for some of LAMD's chips is done in Taiwan.  *Id.*

foreign distributor's warehouses, before delivery to a customer in Japan. *Id.* at ¶ 9. LAMD

neither makes, uses, sells nor offers for sale any of its products in Delaware. *Id.* at ¶ 4.

LAMD does not (a) own any property, offices, or assets in Delaware; (b) have any

employees in Delaware; (c) sponsor any events in Delaware; (d) operate any subsidiaries in

Delaware; (e) have any bank accounts or pay any taxes in Delaware, other than LAMD paying

the annual franchise tax resulting from its incorporation in Delaware; or (f) engage in any

marketing, advertising, or online campaigns that specifically target Delaware. *Id.* at ¶ 7. Other

than its incorporation in Delaware, including the retention of an agent for process there, LAMD

has no ties to Delaware. *Id.*

Based on publicly available information, Plaintiff's connection to Delaware appears

nonexistent insofar as the allegations of this case are concerned. Plaintiff is incorporated in

Bermuda, and has its principal place of business there. Complaint at ¶ 1. Plaintiff's parent

holding company, Marvell Technology Group, Ltd. ("MTG")[4], has been around for over 15

years and has nearly $3 billion in net revenue. Declaration of Mark W. Danis In Support of

Link_A_Media Devices Corp.'s Motion to Transfer ("Danis Decl."), Ex. 12. MTG currently

employs approximately five thousand people in various offices and operates more than 30

subsidiaries, including the Plaintiff. *Id.* MTG's most recent web site does not show that MTG or

any of its subsidiaries have offices in Delaware. *Id.* at Ex. 1.

Although Marvell International Ltd. is the named plaintiff and the claimed assignee of the

patents-in-suit (Complaint at ¶¶ 12, 18, 24 and 29), it appears simply to be a holding company

and not responsible for any other corporate functions relevant to the issues in this lawsuit. *Id.* at

---

[4] MTG, a Bermuda corporation, also is the parent holding company of other Marvell
subsidiaries including Marvell Semiconductor, Inc. ("MSI"), a California corporation. *Id.* at Exs.
10, 12.

Ex. 11.  In fact, the named inventors of Plaintiff's patents-in-suit (Zining Wu, Gregory Burd,

Pantas Sutardja and Mats Oberg) do not even work for Plaintiff— according to public

information they are employed by Plaintiff's sister entity, MSI,[5] which is also headquartered in

Santa Clara.  *Id.* at Exs. 2-5, 8.  And as disclosed on the face of the asserted patents, the inventors

reside in the Northern District of California.  *Id.* at Ex. 7; Exhibit D to Complaint.  Moreover,

MSI is the subsidiary that designs, develops, markets and sells, among other products, read

channel devices for storage products – which are the products at issue in this lawsuit.  Danis

Decl., Ex. 9.  As a result, MSI is likely to have information regarding conception and reduction

to practice of the patented inventions, and the design, development, marketing and sales of

MSI's own read channel products.  Given that LAMD and MSI, the two entities which have the

most relevant information to this lawsuit, are located only approximately 3 miles away from each

other (Danis Decl. ¶ 17), it makes no sense that Plaintiff chose to litigate this case in Delaware.

## ARGUMENT

28 U.S.C. §1404(a) allows transfer for "the convenience of parties and witnesses, in the

interest of justice."  28 U.S.C. §1404(a).  On a motion to transfer, courts first should decide

whether the current lawsuit could have been brought in the jurisdiction to which the transfer is

sought.  Courts should then employ a balancing test, examining both the relevant private and

public interest factors.  Here, it cannot be disputed that this case could have been brought in the

Northern District of California.  Moreover, the totality of the private and public factors squarely

favors transfer.

---

[5] Because MSI is not a party in this case, any discovery sought from it will require the
issuance of a subpoena pursuant to Federal Rule of Civil Procedure 45.

## I.   THIS LAWSUIT COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF CALIFORNIA

Plaintiff cannot dispute that this lawsuit could have been brought in Northern District of California. A civil action for patent infringement may be brought in the judicial district where "the defendant resides." *See* 28 U.S.C. § 1400(b). To determine where a corporation "resides," the Court can look to any judicial district in which the corporation is subject to personal jurisdiction at the time the action is commenced. *Belden Techs., Inc. v. LS Corp.*, Civ. No. 08-823-SLR, 2010 U.S. Dist. LEXIS 105056, at *28 (D. Del. Sept. 30, 2010). A judicial district can exercise personal jurisdiction over a corporation when (1) the corporation is amenable to process in the forum state; and (2) the court's exercise of personal jurisdiction over the corporation complies with the precepts of federal due process as delineated in *International Shoe Co. v. State of Wash.*, 326 U.S. 310 (1945). *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000). The Northern District of California meets each of these factors with respect to LAMD.

From LAMD's headquarters in Santa Clara, California, its officers direct, control and conduct the company's regular business activities. Thus, there is no dispute that LAMD's headquarters is also its principal place of business. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) ("principal place of business is best read as referring to the place where a corporation's officers direct, control, and coordinate a corporation's activities"). Because its principal place of business is in California, LAMD is amenable to service of process there and California courts have personal jurisdiction over it. *See* CAL. CIV. PROC. § 410.10 (Deering 2008) ("[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States"); *see also LSI Indus.*, 232 F.3d at 1371 (Federal Circuit "defer[s] to

a state's highest court to interpret whether a defendant is amenable to service of process in the forum state" under state law).

Finally, because the test for venue is "subsumed" within the test for personal jurisdiction, LAMD's amenability to jurisdiction in the Northern District of California establishes that venue is proper there as well. *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1577 n.1 (Fed. Cir. 1994).

## II.   TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA SERVES CONVENIENCE AND IS IN THE INTEREST OF JUSTICE

In determining whether a transfer is proper under section 1404(a), this Court must engage in "a multi-factor balancing test" that embraces not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain additional private and public considerations. *Jumara v. State Farm Ins. Co.*, 55 F.3d 875, 879 (3d Cir. 1995). The private interests that Delaware courts consider include:

(1)   The plaintiff's choice of forum;

(2)   The defendant's preferred forum;

(3)   Where the claim arose;

(4)   The convenience of the parties;

(5)   The convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and

(6)   The location of books and records, again, only to the extent that they may not be available in one of the fora.

*Id.* at 879. The public interests that Delaware courts consider include:

(1)   The enforceability of the judgment;

(2)   Practical considerations that could make the trial easier, quicker, or less expensive;

(3)   Court congestion;

(4)     Local interest in the controversy;

(5)     Public policies of the fora; and

(6)     The trial judge's familiarity with the applicable state law, if any.

*Id.* at 879-80 (citations omitted). Balancing the private factors and public interests here, it is

clear that they strongly weigh in favor of transfer to the Northern District of California.

A.      **The Private Interests Weigh in Favor of Transfer.**

        1.      *Delaware is Not Plaintiff's "Home Turf."*

Since Plaintiff neither is incorporated nor has its principal place of business in Delaware,

its choice of Delaware as the forum for this case should not be given "substantial deference."

*Stratos Lightwave, Inc. v. E20 Communs., Inc.,* No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653, at

*6-7 (D. Del. Mar. 26, 2002). Indeed, "[t]he preference for honoring a plaintiff's choice of

forum is simply that, a preference; it is not a right." *E.I. DuPont de Nemours & Co. v. Diamond

Shamrock Corp.,* 522 F. Supp. 588, 592 (D. Del. 1981). Because Plaintiff chose a forum which

has "no connection to [it]self or the subject matter of the suit, and is thus not [its] 'home turf,'

the burden on the defendant is reduced and it is easier for the defendant to show that the balance

of convenience favors transfer." *Ballard Med. Prods. v. Concord Labs., Inc.,* 700 F. Supp. 796,

800 (D. Del. 1988) (citation omitted).

        2.      *Plaintiff's Claim Arose Outside of Delaware.*

There is no dispute that the central facts of this lawsuit – which relate to the development,

operation, and sales of microchips – occurred outside of Delaware. *See Mekiki Co. v. Facebook,

Inc.,* No. 09-745 (JAP), 2010 U.S. Dist. LEXIS 55638, at *8-9 (D. Del. June 7, 2010)

("Additionally, the Court affords less deference to Plaintiff's forum choice because the operative

facts of this lawsuit occurred outside of Delaware.") As discussed above, the development,

manufacturing, testing, and sale of the accused products do not occur in Delaware.  Rather,

LAMD's business operations are in California and abroad, and all manufacturing occurs in Asia.

As a result, "the preferred forum," which is the *center of gravity* of the accused activity," is not

Delaware, but the Northern District of California.  *Inter-City Prods. Corp. v. Insurance Co. of N.*

*Am.*, No. 90-717-SLR, 1993 U.S. Dist. LEXIS 886, at *29-30 (D. Del. Jan. 26, 1993) ("center of

gravity" not in Delaware where parties and injury are located out-of-state).

        *3.*    *The Convenience of the Parties Weighs in Favor of Transfer.*

       The convenience of the parties also weighs strongly in favor of transfer to the Northern

District of California.  As a preliminary matter, that LAMD is incorporated in Delaware is not

dispositive.  *Mekiki Co.*, at *9-10 ("it is clear that a party's incorporation in Delaware is not

dispositive of a motion to transfer"); *Synthes USA, LLC v. Spinal Kinetics, Inc.*, Civ. No. 08-838-

SLR, 2009 U.S. Dist. LEXIS 13743, at *2-3 (D. Del. Feb. 24, 2009) (granting a motion to

transfer to Northern District of California where defendant is a "regional enterprise" whose "only

connection to the State of Delaware [was] its incorporation").

       Like the defendant in *Spinal Kinetics*, LAMD is a privately-held company that primarily

runs its business from its Santa Clara office, including making decisions regarding the

company's business strategy, research, and development.  Outside that office, LAMD only

employs six people whose primary focus is maintaining relationships with its customers, and

none of these employees is in Delaware.  LAMD is akin to a regional enterprise as to which the

Northern District of California will be a far more convenient location to litigate.  *Id.*

       Since the Bermuda-incorporated Plaintiff apparently maintains no offices within

Delaware either, it will suffer no inconvenience as a result of a transfer.  *In re Genentech, Inc.*,

566 F.3d 1338, 1345, 1348 (Fed. Cir. 2009) (case transferred to Northern District of California

where defendant was headquartered since the foreign plaintiff "will be traveling a great distance

no matter which venue").  In fact, since MSI will have significant involvement in the litigation,

as it employs the inventors of the patents-in-suit, and designs, develops, markets and sells

Marvell's own read channel chips, convenience actually will be equally served for MSI by

transferring the case to Northern District of California, given that MSI and LAMD are located

three miles apart.  *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998)

(transferring case between two California companies to the Northern District of California

"would reduce the costs to all parties involved in this litigation").[6]

> 4.     *Relevant Records Are in the Northern District of California, Where*
>        *Discovery Disputes with Third Parties Will Be Litigated.*

Most of LAMD's records, including those concerning the accused infringing products,

such as engineering records, testing data, along with samples of the accused products, are stored

at its headquarters in the Northern District of California.  This fact too weighs in favor of

transfer.[7] *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (location of records and

documents should be considered in determining a motion to transfer).  Moreover, it is likely that

the bulk of documents relating to the conception and reduction to practice of the patented

inventions also are located within the Northern District of California, since the inventors work at

MSI's headquarters. *See* Declaration of Zining Wu in Support of Marvell's Motion to Transfer

in *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, Case No. 2:09-cv-00290-

---

[6] By transferring to the Northern District of California, both parties would be spared from paying fees to local counsel. *Affymetrix*, 28 F. Supp. 2d at 205-206.  LAMD's lead trial counsel is already in the Northern District of California, and Plaintiff's counsel also has an office in that district.

[7] While admittedly some courts have downplayed the weight of this factor, given that records often are stored electronically (and therefore can be produced easily in any jurisdiction), courts nonetheless continue to consider this factor as relevant to transfer analysis. *Affymetrix*, 28 F. Supp. 2d at 206 (the fact that the relevant records are located in the Northern District of California favored transfer).

NBF ("Wu Decl. in *CMU v. Marvell*")(attached as Ex. 7 to Danis Decl.)  This yet again is another factor favoring transfer, as it would "reduce the costs to all parties involved in this litigation." *Affymetrix*, 28 F. Supp. 2d at 208.

Because LAMD will be required to issue and serve third-party subpoenas upon the inventors and their employer MSI, any discovery disputes arising out of those subpoenas will need to be litigated in the Northern District of California.  Fed. R. Civ. P. 37(a)(2); *USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901, 905 (N.D. Cal. 2010) (motion to quash properly before the Northern District of California because the subpoena in question was issued by that district).  This is yet an additional reason why this case belongs in California and not Delaware.

> 5.    *The Convenience of Witnesses Weighs in Favor of Transfer.*

Nearly all of LAMD's employees work at the company's California headquarters, including the officers of the company, key engineers, and people with knowledge about financial matters.  Endy Decl. ¶¶ 5, 10.  Although the parties are obligated to procure the attendance of their own testifying employees at trial, an employee's absence from work due to his involvement in litigation creates a burden that weighs in favor of transfer.  *See Affymetrix*, 28 F. Supp. 2d at 203 (observing that the level of disruption caused by legal proceedings would be minimized by transferring to the Northern District); *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) (recognizing the burden on witnesses to travel far for trial).  Any prolonged absence of proposed witnesses will hinder LAMD's day-to-day operations, especially in light of the fact that LAMD is still in its emerging stages and employs less than 150 people.

The convenience of the inventor witnesses also favors transfer.  Those witnesses, who reside in California, are employed by non-party MSI and are therefore outside of the subpoena power of the District of Delaware.  In contrast, these witnesses are within the subpoena power of the Northern District of California and can be compelled to attend trial within easy travel

distance of their homes.  Consequently, as to these inventor witnesses, transfer is not simply a matter of convenience; rather, transfer is necessary to allow LAMD to compel their attendance at trial.[8]

Even assuming that the inventor witnesses voluntarily agree to appear at trial, it still would be far more convenient for these and LAMD's witnesses to testify at trial in the Northern District of California. *See In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("The convenience and cost for witnesses is an important factor in the transfer calculus."). Moreover, potentially relevant third parties, such as LAMD's foreign distributor, are not located in Delaware, but are more proximate to California. Endy Decl. ¶¶ 8-9.

Notably, in its own recently filed motion to transfer a case from the Western District of Pennsylvania to the Northern District of California, MSI stressed the inconvenience to Messrs. Burd and Wu, two of the named inventors of the patents in this case, and the business disruption that would be caused by their absence. As MSI wrote:

> Knowledgeable [MSI] witnesses concerning the design, operation, and features of the Accused Products ... include: Zining Wu, [MSI]'s Vice President of Data Storage Technology, ... and Greg Burd, [MSI]'s Senior Manager of Engineering. ***Messrs. Wu ... and Burd each live and work in the Northern District of California***. Each is important to [MSI]'s ongoing data storage business operations, which would be ***significantly disrupted by their having to travel to/from and attend a lengthy trial in the Western District of Pennsylvania***. (emphasis added).

*See* Marvell's Motion to Transfer Venue to the Northern District of California, *CMU v. Marvell*; Wu Decl. in *CMU v. Marvell* (attached as Exs. 6 and 7 to Danis Decl.).[9]

---

[8] Here, because the named inventors are not employees of Plaintiff, but rather a third party, the court must be able to "compel[]" these "critical witnesses" to "attend trial." *Cisco Sys. v. GPNE Corp.*, Civ. No. 07-671-SLR, 2008 U.S. Dist. LEXIS 31877, at *7 (D. Del. Apr. 17, 2008).

[9] In *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, Case No. 2:09-cv-00290-NBF, Carnegie Mellon University ("CMU") sued MTG and MSI (collectively as "Marvell") in

In sum, a transfer to the Northern District of California will reduce the travel of trial witnesses for LAMD from a cross-country trip to a less than one hour commute, and will enable LAMD to subpoena for trial the inventors of the patents in suit. *Jahncke Service, Inc. v. OKC Corp.*, 301 F. Supp. 866, 868-69 (D. Del. 1969) (significant factor in granting transfer is that all witnesses located in transferee forum).

**B.**      **The Public Interest Factors Weigh in Favor of Transfer.**

*1.      The District of Delaware's Docket Is More Congested Than That of the Northern District of California.*

Court congestion also weighs strongly in favor of transfer. This Court has previously focused on "the hardship to the courts involved and the scarcity of judicial resources vis a vis the parties." *Motorola, Inc. v. Research in Motion Ltd.*, No. 08-104-SLR, 2008 U.S. Dist. LEXIS 65943, at *6 (D. Del. Aug. 26, 2008). That judicial resources are scarce in Delaware is amply demonstrated by the fact that at least 15 judges from other districts in other states have presided over cases filed in the District of Delaware. *See* "Designation of a District Judge for Service Within Another District" at http://www.ded.uscourts.gov/OrdersMain.htm). A comparison of the statistics for the dockets in the District of Delaware and Northern District of California from January 2005 to the January 2010 show that judges in the District of Delaware have a heavier patent case load than those in the Northern District of California. Specifically, in Delaware, each district judge has handled an average of 177 patent cases over the relevant time period. Danis

---

March 2009, alleging that various Marvell read channel devices infringe U.S. Patent Nos. 6,201,839 and 6,438,180. Marvell filed a motion to transfer in July 2009, emphasizing, among other things, the inconvenience to its witnesses, including Messrs. Wu and Burd, both of whom work and live in the Northern District of California. Judge Nora Barry Fischer denied Marvell's motion, citing the fact that CMU resides in that district, and that the matter is of "local interest." 2009 WL 3055300, at *2, *6 (W.D.Pa. Sep. 21, 2009). The facts here are distinguishable. Plaintiff does not reside in Delaware, and since the activities relevant to the alleged infringement arose outside of Delaware, the matter is not of "local interest" to Delaware.

Decl., Ex. 14.  By contrast, each district judge in the Northern District of California has only

handled an average of 39 patent cases, or less than one-fourth of a Delaware district judge's

average case load.  *Id.* at Ex. 13.

Because the District of Delaware "has far fewer resources than any of the other courts

implicated by this litigation… there is no sound reason to maintain any part of this dispute in this

court."  *Motorola*, 2008 U.S. Dist. LEXIS 65943 at *6.  The Northern District of California has

more resources, including 15 district court judges on active status, and 11 magistrate judges, as

compared to only three regularly assigned district court judges and one magistrate judge in the

District of Delaware.  Danis Decl. ¶ 16.  A transfer will therefore lessen the heavy burdens

already placed on the District of Delaware's resources.

2.     *There is No Local Interest to Resolve the Dispute in Delaware.*

There is little if any local interest involved in this case.  Neither LAMD nor, to its

knowledge, Plaintiff has any relevant presence in Delaware, and none of the operative facts find

its situs there.  *Ricoh v. Honeywell*, 817 F. Supp. 473, 486 (D. N.J. 1993)(where the locus of the

majority of the alleged culpable conduct is Minnesota, that state has a strong public interest in

adjudicating this dispute).  In fact, it is well established that the locus of the dispute is in

California, where LAMD is headquartered, as is Plaintiff's sister entity which employs the

named inventors of the patents-in-suit and is responsible for Plaintiff's read channel device

business, and where most of the key witnesses and documents are located.  As such, there is no

need to burden a jury in Delaware with this controversy.  *Id.* at 487. ("New Jersey jurors should

not be burdened with adjudicating a matter concerning allegations of patent infringement

stemming from conduct which is/was largely localized in Minnesota and Illinois").

### III.    CONCLUSION

The Court should not allow Plaintiff to forum shop, especially when Delaware is not Plaintiff's home turf and the "center of gravity" of the accused activity is not in Delaware. Rather, the locations of the records and witnesses, as well as LAMD's headquarters and principal place of business, are almost entirely within the Northern District of California.  Even more importantly, given that judicial resources are scarce in the District of Delaware, the interests of justice are served by transferring this case to the Northern District of California where it could originally have been filed.  Therefore, LAMD respectfully requests that the Court grant its motion to transfer venue to the Northern District of California.

Respectfully Submitted,

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


/s/ Monté T. Squire
Elena C. Norman (No. 4780)
Monté Squire (No. 4764)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
enorman@ycst.com
msquire@ycst.com
(302) 571-6600

*Counsel for Defendant Link_A_Media Devices
Corporation*

OF COUNSEL

Harold J. McElhinny (Admitted *Pro hac Vice*)
Mark W. Danis (Admitted *Pro Hac Vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2483
(415) 268-7000

Diana Luo (Admitted *Pro Hac Vice*)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304-1018
(650) 813-5600

Dated: November 29, 2010

## CERTIFICATE OF SERVICE

I, Monté T. Squire, Esquire, hereby certify that on November 29, 2010, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Thomas Lee Halkowski, Esquire
> Martina Tyreus, Esquire
> Fish & Richardson P.C.
> 222 Delaware Avenue, 17th Floor | P. O. Box 1114
> Wilmington, DE  19899-1114
> *halkowski@fr.com | tyreus@fr.com*

> *Attorneys for Plaintiff*

I further certify that on November 29, 2010, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

> William Sekyi, Esquire
> Indranil Mukerji, Esquire
> Fish & Richardson P.C.
> 1425 K Street, N.W., Suite 1100
> Washington, DC  20005
> *sekyi@fr.com | mukerji@fr.com*

> *Attorneys for Plaintiff*

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> */s/ Monté T. Squire*
> Elena C. Norman (No. 4780)
> Monté T. Squire (No. 4764)
> The Brandywine Building | 1000 West Street, 17th Floor
> Wilmington, DE 19899
> (302) 571-6600
> *msquire@ycst.com*

> *Attorneys for Defendant Link_A_Media Devices Corp.*